Michael A. Long, Esq. (SBN: 266555)
[mlong@aexius.com]
LONG & ASSOCIATES
1920 Hillhurst Avenue, #1139
Los Angeles, CA 90027
T: (310) 625-3395
F: (213) 915-3133
*Counsel for Plaintiff, SITETOOLS, INC.*

John B. Berryhill (*Pro Hac Vice Pending*)
[john@johnberryhill.com]
John B. Berryhill LLC
204 East Chester Pike
First Floor, Suite 3
Ridley Park, PA 19078
+1.610.565.5601 voice/fax
*Counsel for Plaintiff, SITETOOLS, INC.*
*Pro Hac Vice Pending*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SITETOOLS, INC., a California corporation,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>BANSK GROUP LLC, a Delaware limited liability company,<br>　　　　　　Defendant. | CIVIL CASE NO.<br><br>**COMPLAINT**<br><br>1. **Declaratory Judgment of Non-Cybersquatting Under 15 USC 1125(d);**<br><br>2. **Declaratory Judgment of Non-Infringement; and**<br><br>3. **Cancellation of Junior Mark Under 15 USC § 1119** |

**COMPLAINT**

Plaintiff SITETOOLS, INC. alleges as follows:

## Nature of the Case

1. This is an action brought by Plaintiff SITETOOLS, INC. ("Sitetools") against Defendant BANSK GROUP LLC for declaratory relief pursuant to 28 U.S.C. § 2201 to establish that Sitetools' senior registration and use of the internet domain name <bansk.com> since 2013 (the "Domain Names") is not unlawful under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d) ("ACPA"), or otherwise under the Lanham Act (15 U.S.C. §§ 1051 et. seq.); and for cancellation under 15 USC § 1119 of Defendant's junior US Trademark Reg. No. 6,148,600 issued in 2021.

## Parties

2. Plaintiff, SITETOOLS, INC., is a California corporation having an address of 1101 Lincoln Blvd., Santa Monica, CA 90403, in this judicial district.

3. Defendant, BANSK GROUP LLC, is a Delaware limited liability company having an address of 65 Radcliffe Rd., Wellesley, MA 02482.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201-2202; the Lanham Act, 15 U.S.C. §1051 et seq.; the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. §1125(d); and 28 U.S.C. §1338 (trademarks).

5. This Court has jurisdiction over the parties as Plaintiff is located in this judicial district and Defendant has directed threats of litigation into this district against Plaintiff concerning acts performed by Plaintiff in the course of Plaintiff's business conducted in this judicial district.

6. Venue is proper in this district under 28 U.S.C. § 1391 as a defendant in this action resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

7. This action is properly assigned to the Western Division of this Court because a substantial portion of the events giving rise to the dispute occurred in Los Angeles County.

## General Allegations

8. Plaintiff is an internet website developer established as a California corporation in November 2006.

9. Plaintiff's business has included the acquisition of internet domain names which Plaintiff believes to have commercial monetization potential and developing websites for them or directing traffic from such internet domain names to other websites pertaining to keyword content within such domain names.

10. Over the course of its operations to date, the Plaintiff has obtained various US registered trademarks relating to websites it operates or has operated, such as:

| US TM Reg. No. | Word Mark |
|---|---|
| 4103072 | DEOS.COM |
| 4099793 | POCKETBOOK.COM |
| 4375991 | FOREVERMORE.COM |
| 4228704 | CAMPUSWORKS.COM |
| 4181043 | NETPAD |
| 4151875 | MARKETREACH |
| 4136418 | NETSPACE.COM |
| 4038524 | IGROOVE.COM |
| 3993334 | WORDSHOP.COM |
| 3990160 | SELFPAGE.COM |
| 3985690 | SITY.COM |
| 3928795 | VIDI |
| 3608178 | AVIDA |
| 3377223 | SITETOOLS |
| 4605673 | TWEAKED |

11. On or about August 22, 2013, Plaintiff acquired the internet domain name bansk.com.

12. Since having acquired the domain name bansk.com, Plaintiff has used it to advertise banking and financial services.

13. The Plaintiff's acquisition of bansk.com is consistent with Plaintiff's acquisition and development of domain names containing generic keywords, as "bansk" is a common typographical variant of the generic word "banks".

14. The Plaintiff's historical use of the domain name is shown, for example, in the Internet Archive "Wayback Machine", which stores occasional visits to internet websites. According to the Internet Archive, the Plaintiff has used the domain name for many years to forward traffic for <bansk.com> to a mortgage information and referral website at <refinancemortgage.com>.

COMPLAINT
-3-

15. The Internet Archive entry for <bansk.com> for March 27, 2016, shows that traffic was re-directed to <refinancemortgage.com>:



16. The Internet Archive entry for <bansk.com> for January 9, 2018, shows that traffic was re-directed to <refinancemortgage.com>:



**COMPLAINT**
-4-

17. The Internet Archive entry for <bansk.com> for June 4, 2019, shows that traffic was re-directed to <refinancemortgage.com>:



18. The Internet Archive entry for <bansk.com> for November 27, 2021, shows that traffic was re-directed to <refinancemortgage.com>:



19. Plaintiff continues to direct traffic for <bansk.com> to <refinancemortgage.com> in the same manner as Plaintiff has been doing since at least as early as 2016 as shown in the Internet Archive.

20. Defendant Bansk Group LLC was formed as a Delaware LLC in March 2019.

21. Defendant utilizes the internet domain name <banskgroup.com> which was registered in January 2019.

22. On information and belief, Defendant is not a successor in interest to any prior user of any name or mark comprising "BANSK".

23. At the time Defendant was formed, Defendant had registered and was using the domain name <bansk.com> for more than five years senior to Defendant.

24. At the time Defendant acquired the domain name <banskgroup.com>, Plaintiff had registered and was using the domain name <bansk.com> for more than five years senior to Defendant.

25. On information and belief, Defendant knew Plaintiff was the registrant and user of the domain name <bansk.com> at the time Defendant settled upon using the longer domain name <banskgroup.com>.

26. On or about April 29, 2019, Defendant filed US trademark registration application no. 88/406,480 for "BANSK" for "Providing venture capital, development capital, private equity and investment funding".

27. Defendant's US trademark application was filed on an intent to use basis, and did not claim use in commerce in the mark as of the time it was filed.

28. Defendant's application was accompanied by a Declaration under 18 USC 1001 signed by Defendant's Managing Member, William Mordan stating:

> "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.
>
> To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.
>
> The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

29. At the time Mr. Mordan made the Declaration, Plaintiff had registered and been using the domain name <bansk.com> to re-direct traffic to <refinancemortgage.com> for more than five years.

30. On information and belief, Mr. Mordan has been licensed to practice law in Ohio, New Jersey and Massachusetts.

31. On information and belief, Mr. Mordan had reason to know that his Declaration was false, because the Plaintiff was already using the domain name

<bansk.com> and Defendant had already settled on the longer and less convenient <banskgroup.com> domain name.

32. Defendant's application for US trademark registration was filed on an "intent to use" basis.  On or about June 26, 2020, Defendant, through its counsel, submitted a "Statement of Use" in order to proceed toward registration of the claimed "BANSK" mark.

33. Defendant's "Statement of Use" claimed a "date of first use" of December 16, 2019 of the claimed "BANSK" mark using an undated business card as its specimen of use.

34. Plaintiff's registration of <bansk.com> is more than six years senior to Defendant's claimed "date of first use."

35. Plaintiff's use of <bansk.com> to re-direct traffic to <refinancemortgage.com> is at least more than three years senior to Defendant's claimed date of first use of the claimed "BANSK" mark.

36. Defendant's "Statement of Use" was signed by a licensed attorney, Linda Graham of Dunlap Bennett & Ludwig, acting on behalf of the Defendant.  Ms. Graham personally declared in the Statement of Use on behalf of the Defendant:

> "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive.

**COMPLAINT**
-8-

> To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.
>
> The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

37. At the time Ms. Graham signed the Declaration, Plaintiff had been using the domain name <bansk.com> for at least five years to re-direct traffic to <refinancemortgage.com>.

38. On information and belief, Ms. Graham's Declaration was false and Ms. Graham had reason to know it was false by virtue of Plaintiff's senior use of the domain name.

39. On the basis of representations made by Mr. Morden and Ms. Graham, Defendant procured US TM Reg. No. 6,148,600 on September 8, 2020.

40. On information and belief Defendant's procurement of US TM Reg. No. 6,148,600 was procured through knowingly false declarations submitted to the United States Patent and Trademark Office during prosecution thereof.

41. At the time Defendant's US trademark registration issued, Plaintiff had registered the domain name <bansk.com> for more than seven years.

42. On January 10, Defendant contacted Plaintiff via email, through counsel, stating:

"I represent a party that is interested in acquiring the bansk.com domain name. Based on the whois records, I believe SiteTools currently owns this domain. Kindly let me know if your company would be willing to sell this domain, and if so, what your asking price is."

43. The January 10 email did not identify Defendant.

44. The January 10 email did not make any legal claim or raise any dispute with the Plaintiff.

45. The January 10 email did not offer to settle a disputed legal claim with the Plaintiff.

46. At the time of the January 10 email, Plaintiff was using the domain name <Bansk.com> in the same manner as it had used the domain name since at least as early as 2016. Plaintiff had no interest in selling the domain name, and replied:

"The domain Bansk.com is currently not for sale. If your client has a compelling offer we'd love to hear it."

47. On January 11, Defendant offered US $10,000 to purchase the domain name, stating:

COMPLAINT
-10-

> "My client is willing to offer $10,000 to compensate for your time. Let me know if that works for you."

48. Defendant's January 11 offer was not made to settle a legal claim of any kind, and no legal claim had been raised by Defendant.

49. Plaintiff refused Defendant's January 11 offer, and made no counter offer.

50. On November 2, 2022, Defendant's counsel returned to Plaintiff with a $10,000 offer, this time including a threat of legal action if the Defendant refused the offer, stating:

> "My client is preparing a complaint under the Anticybersquatting Consumer Protection Act and related laws regarding your company's ownership and use of the bansk.com domain."

51. In the November 2 email, Defendant's counsel still did not identify Defendant. Accordingly, Plaintiff engaged counsel to obtain further information about the Defendant's counsel's threat of litigation. In a further response to Plaintiff's counsel, on November 10, 2022, Defendant's counsel declared Defendant's intention to proceed with an "ACPA claim" against Plaintiff:

> "I have simply stated the fact that my client is preparing a complaint. In terms of the nature of that complaint, I have already informed you that it is an ACPA claim. As you are well aware, ACPA claims are based on trademark rights, so it likely comes as little surprise that my "mystery" client is the owner of a federal trademark registration for BANSK in connection with

financial services (RN 6148600). Our claim is further based upon the fact that your client has been using bansk.com to forward traffic to its competing financial services website offering mortgage services, which constitutes bad faith use of the domain. Given that your client is located in the United States, if the complaint is filed, we would be filing in personam rather than in rem, which allows my client to seek not only transfer of the domain but also actual damages and attorney's fees."

52. On November 11, 2022, Defendant's counsel further stated:
"I have only communicated (in response to your express request for more information about my client's claims) my client's intent to seek the remedies allowed under federal law to compensate my client for the harms and losses that your client has already inflicted on my client through its acts of trademark infringement and cybersquatting."

### COUNT 1 – Declaratory Judgment of Non-Cybersquatting
### Under 15 USC 1125(d)

53. Plaintiff hereby incorporates the allegations of Paragraphs 1 through 52, by this reference as though set forth in full.

54. On information and belief, Defendant's reference to an "ACPA claim" is intended to refer to 15 USC 1125(d) which, along with other provisions of 15 USC, is commonly referred to as the "Anticybersquatting Consumer Protection Act."

55. Defendant has stated through counsel to be "preparing a complaint" and stating that such complaint will "seek not only transfer of the domain but also actual damages and attorney's fees."

56. Defendant has stated through counsel that it has an "intent to seek the remedies allowed under federal law" through alleged "acts of trademark infringement and cybersquatting."

57. Based on Defendant's communications through counsel Plaintiff has a reasonable apprehension that the Defendant intends to act on its stated "intent to seek the remedies allowed" based on claims Plaintiff has engaged in "acts of trademark infringement and cybersquatting".

58. Defendant has threatened legal action to deprive the Plaintiff of the domain name and to seek monetary damages against the Plaintiff under the *in personam* damages provisions of the ACPA.

59. Plaintiff's business and assets threatened by the Defendant are located in this judicial district.

60. Defendant's initial contact with the Plaintiff in January 2022, long silence, and renewed contact, including its threat of legal action against Plaintiff in November 2022, causes a substantial and material uncertainty in the continued conduct of Plaintiff's business in relation to the domain name which the Plaintiff has carried on for years.

61. In relation to cybersquatting against a trademark, the ACPA, 15 USC 1125(d), requires:

"a mark that is distinctive at the time of registration of the domain name" (15 USC 1125(d)(1)(A)(ii)(I));

OR

"a mark that is famous at the time of registration of the domain name" (15 USC 1125(d)(1)(A)(ii)(II)).

62. At the time of Plaintiff's registration of the domain name in 2013, the Defendant did not have a mark that was distinctive or famous.

63. At the time of Plaintiff's registration of the domain name in 2013, the Defendant did not even exist.

64. There is a bona fide dispute between the parties as to which of them has the legal right to use the domain name <bansk.com>.

65. Plaintiff asks that the Court issue a Judgment declaring Plaintiff owns the rights in and to the domain name <bansk.com> based on its prior years of usage of <bansk.com> in commerce as set forth above.

**COUNT 2 – Declaratory Judgment of Non-Infringement**

66. Plaintiff hereby incorporates the allegations of Paragraphs 1 through 65, by this reference as though set forth in full.

67. Plaintiff's use of <bansk.com> to direct internet traffic to <refinancemortgage.com> began at least as early as 2016. Such registration and

COMPLAINT
-14-

use has continued to date and is senior to any claim of rights by Defendant in its claimed "BANSK" trademark.

68. Defendant's claim of rights in its alleged "BANSK" mark is junior to the acts of Plaintiff alleged by Defendant to constitute trademark infringement in Defendant's November 11, 2022 threat of litigation, and thus Defendant cannot allege a necessary element of its claim of trademark infringement.

69. Plaintiff's use of the domain name <bansk.com> to forward internet traffic to <refinancemortgage.com> does not constitute use of the alleged "BANSK" mark. The use of <bansk.com> as a forwarding domain name does not cause the display of any "BANSK" mark on or in connection with any goods or services, or is not an infringing use of the term "BANSK".

70. Plaintiff's use of the domain name <bansk.com> is intended to exploit a common typographic variation of the word "banks", and is thus generic in connection with consumer mortgage information and referral services.

71. Plaintiff's use of the domain name <bansk.com> for redirection to consumer home mortgage information and referral services is unlikely to cause confusion or mistake with Defendant's alleged junior claim in "BANSK" for business venture-oriented services of "Providing venture capital, development capital, private equity and investment funding," as the services are substantially unrelated and directed to substantially different markets in respective consumer and business services.

72. Plaintiff has periodically been charged automatic maintenance payments for the <bansk.com> domain name.  Plaintiff does not believe maintenance of its prior existing domain name constitutes an infringement of Defendant's "BANSK" mark.

73. There is a bona fide dispute between the parties as to whether Plaintiff's use the domain name <bansk.com> infringes Defendants "BANSK" mark.

74. Plaintiff asks that the Court issue a Judgment declaring Plaintiff's use of its domain name <bansk.com> in commerce as set forth above does not infringe Defendant's "BANSK" mark.

**COUNT 3 - Cancellation of Junior Mark Under 15 USC § 1119**

75. Plaintiff hereby incorporates the allegations of Paragraphs 1 through 74, by this reference as though set forth in full.

76. Plaintiff has been using the domain name <bansk.com> in commerce since at least 2013 in conjunction with financial services.

77. According to its website, Defendant BANSK GROUP LLC is a private investment firm formed in 2019.  Defendant obtained a registration for its "BANSK" trademark on September 8, 2020, as Registration Number 6148600.

78. Existence of Defendant's "BANSK" mark in commerce for financial investments creates a probability of consumer confusion with Plaintiff's senior <Bansk.com> domain name used in conjunction with financial services.  Plaintiff

is harmed by Defendant's continuing use of its "BANSK" mark. Plaintiff therefore asks that the Court order Defendant's "BANSK" trademark be transferred to Plaintiff as the senior user, or alternatively cancelled to avoid any risk of consumer confusion.

79. Plaintiff further asks that the Court award Plaintiff statutory damages under 15 USC 1117(c) for up to $200,000 to punish and deter Defendant's willful infringement of Plaintiff's rights.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant the following relief:

A. A Declaration that Plaintiff's registration and use of the domain name <bansk.com> does not violate Defendant's rights under 15 USC 1125(d);

B. A Declaration that Plaintiff's registration and use of the domain name <bansk.com> does not infringe any trademark rights claimed by the Defendant;

C. (i) Transfer of ownership and control of rights to and including Trademark Registration No. 6,148,600 to Plaintiff; *or alternatively*, (ii) Cancellation of Defendant's US trademark registration under 15 U.S.C. § 1119;

D. An injunction against any action by Defendant to interfere with Plaintiff's lawful use of the domain name <bansk.com>;

E. Transfer of ownership and control of the website domain <banskgroup.com> to Plaintiff;

F. Statutory damages under 15 USC §1117(c) for up to $200,000 to punish and deter Defendant's willful infringement;

G. An award of attorney's fees and costs; and

H. Such other relief as the Court may deem appropriate.

Respectfully Submitted,

Dated: November 12, 2022            LONG & ASSOCIATES

*/s/ Michael A. Long*
Michael A. Long, Esq.
*Counsel for Plaintiff,*
*SITETOOLS, INC.*

Dated: November 12, 2022            JOHN B. BERRYHILL LLC

*/s/ John B. Berryhill*
John B. Berryhill, Ph.D., Esq.
*(Pro Hac Vice Application Pending)*
*Counsel for Plaintiff,*
*SITETOOLS, INC.*