Lisa Tan (SBN 228326)
ltan@russakowtan.com
RUSSAKOW & TAN, LLP
275 E California Blvd
Pasadena, CA 91106
Telephone: (626) 683-8869
Facsimile: (626) 683-8870

David Ludwig (*pro hac vice* forthcoming)
(Virginia Bar No. 73157)
dludwig@dbllawyers.com
Hyung Gyu Sun (*pro hac vice*)
hsun@dbllawyers.com
(Virginia Bar No. 93070)
DUNLAP BENNETT & LUDWIG
8300 Boone Blvd, Suite 550
Vienna, VA 22182
Telephone: (703) 777-7319
Facsimile: (703) 777-3656

*Attorneys for Defendant*
BANSK GROUP LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SITETOOLS, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>BANSK GROUP LLC,<br><br>       Defendant. | Civil Action No. 2:22-cv-08263 DMG (PVCx)<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ..........................................................................................3

ARGUMENT ..............................................................................................................4

  I.    Legal Standard ................................................................................4

  II.   THIS COURT LACKS PERSONAL JURISDICTION OVER BANSK ............6

    A.   Personal Jurisdiction Does Not Comport with Due Process in This Case ......6

    1.   *General Jurisdiction* ........................................................................7

    2.   *Specific Jurisdiction* ......................................................................7

      *a.  Bansk Has Not Expressly Aimed an Activity at the State of California* ..........9

      *b.  Bansk Neither Caused Nor Knew About Any Harm Likely to Be Suffered in California* ...............................................................................11

  III.  VENUE IS IMPROPER IN THIS DISTRICT.....................................12

    A.   Bansk Does Not Reside in This District ...........................................12

    B.   Nor Did a Substantial Part of Plaintiff's Claims Arise in This District..........13

  IV.  ALTERNATIVELY, THIS CASE MUST BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK .........................................14

  A.   Private Interest Factors Favor the Southern District of New York....................15

  B.   Public Interest Factors Also Favor the Southern District of New York .............16

  V.   PLAINTIFF DOES NOT ALLEGE ANY LEGALLY COGNIZABLE CLAIM IN COUNT III .......................................................................17

CONCLUSION .......................................................................................................19

1

## TABLE OF AUTHORITIES

2

**Cases**      **Page(s)**

3

4

*Adobe Sys. v. Christenson*,
809 F.3d 1071 (9th Cir. 2015) .................................................................. 17

5

*ALO. LLC v. Falsetti*,
2:18-cv-00208, 2018 U.S. Dist. LEXIS 43714 (C.D. Cal. 2018).......... 13, 14

6

7

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ..................................................................... 4, 5

8

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ............................................................................... 5

9

10

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ........................................................ 9, 11, 12

11

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ................................................................... 17

12

13

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
223 F.3d 1082 (9th Cir. 2000) ................................................................. 11

14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................... 5

15

16

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017) ............................................................................... 7

17

*Boon Global Ltd. v. United States Dist. Court (In re Boon Global. Ltd.)*,
923 F.3d 643 (9th Cir. 2019) ..................................................................... 6

18

19

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................... 9

20

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ................................................................... 8

21

22

*Calder v. Jones*,
465 U.S. 783, 104 S. Ct. 1482 (1984)........................................................ 9

23

*CreAgri, Inc. v. USANA Health Sciences, Inc.*,
474 F.3d 626 (9th Cir. 2007)................................................................... 18

24

25

*Daimler AG v. Bauman*,
571 U.S. 117, 134 S. Ct. 746 (2014)........................................................ 7

26

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ........................................................ 14, 15, 16

27

28

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
618 F.3d 1153 (10th Cir. 2010) .................................................. 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915, 131 S. Ct. 2846 (2011).......................................... 7

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501, 67 S. Ct. 839 (1947)............................................. 15

*Int'l Shoe Co. v. Washington*,
326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).......................... 6

*Kia Motors Am., Inc. v. MPA Autoworks*,
Case No. CV 05-4928-NM, 2005 U.S. Dist. LEXIS 49299 (C.D. Cal. 2005)
.................................................................................................. 14

*King v. Am. Family Mut. Ins. Co.*,
632 F.3d 570 (9th Cir. 2011)....................................................... 8

*Lanier v. Haynes*,
Case No. 91-55505, 1992 U.S. App. LEXIS 23601 (9th Cir. 1992) ............. 6

*Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*,
2:13-cv-07086, 2014 U.S. Dist. LEXIS 59544 (C.D. Cal. 2014)................... 4

*Monegro v. Rosa*,
211 F.3d 509 (9th Cir. 2000) ..................................................... 14

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) ..................................................... 9

*Nelson-Ceballos v. Fraser*,
Case No. ED CV-19-01769-AB, 2020 U.S. Dist. LEXIS 258992
(C.D. Cal. 2020)................................................................ 17, 19

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*,
859 F.3d 1032 (Fed. Cir. 2017)................................................... 9

*Nissan Motor Co. v. Nissan Computer Corp.*,
89 F. Supp. 2d 1154 (C.D. Cal. 2000) .......................................... 4

*Norwood v. Kirkpatrick*,
349 U.S. 29 (1950).................................................................. 14

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
52 F.3d 267 (9th Cir. 1995) ....................................................... 8

*Optimal Pets, Inc. v. Nutri-Vet, LLC*,
877 F. Supp. 2d 953 (C.D. Cal. 2012) .......................................... 18

*Pala Invs. Holdings Ltd. v. Alderox Can. Inc.*,
Case No. CV 10-01789 AG, 2011 U.S. Dist. LEXIS 165280 (C.D. Cal. 2011)
.................................................................................................. 5

*Pebble Beach Co. v. Caddy,*
453 F.3d 1151 (9th Cir. 2006) ............................................................. 4, 8

*Picot v. Weston,*
780 F.3d 1206 (9th Cir. 2015) ................................................................ 9

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235, 102 S. Ct. 252 (1981).................................................... 16

*Ranza v. Nike, Inc.,*
793 F.3d 1059 (9th Cir. 2015) ................................................................ 7

*Roth v. Garcia Marquez,*
942 F.2d 617 (9th Cir. 1991) .................................................................. 6

*S. Cal. Darts Ass'n v. Zaffina,*
762 F.3d 921 (9th Cir. 2014) ................................................................ 18

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004) ......................................................... 6, 8, 9

*Shinde v. Nithyananda Found.,*
EDCV 13-00363-JGB, 2014 U.S. Dist. LEXIS 197030 (C.D. Cal. 2014)..... 7

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) .................................................................. 5

*Tuazon v. R.J. Reynolds Tobacco Co.,*
433 F.3d 1163 (9th Cir. 2006) ................................................................ 7

*Uffner v. La Reunion Francaise, S.A.,*
244 F.3d 38 (1st Cir. 2001) .................................................................. 13

*Vast Vantages, LLC v. Bhandari,*
2:21-cv-04896-MCS-MRW, 2021 U.S. Dist. LEXIS 220379 (C.D. Cal. 2021)
..................................................................................................... 10, 11

*Walden v. Fiore,*
571 U.S. 277 (2014)........................................................................ 11, 12

*Ward v. Royal Caribbean Cruise Lines, Ltd.,*
8:08-cv-01077, 2009 U.S. Dist. LEXIS 10383 (C.D. Cal. 2009)................... 4

*Yahoo! Inc. v. La Ligue Contre Le Racisme,*
433 F.3d 1199 (9th Cir. 2006) ...................................................... 8, 9, 11

*Yeager v. Airbus Grp. SE,*
Case Nos. 21-55162, 21-55776, 2022 U.S. App. LEXIS 10705 (9th Cir. 2022)
......................................................................................................... 6

**<u>Rules</u>**

Federal Rule of Civil Procedure 10(c) ................................................ 5

Federal Rule of Civil Procedure 12(b)(2) ........................................... 4

Federal Rule of Civil Procedure 12(b)(6) ...................................... 5, 17

**Statutes**

15 U.S.C. 1125(a) ................................................................... 17

15 U.S.C. 1125(a)(1)(A) ........................................................... 17

15 U.S.C. § 1127 .................................................................. 18

28 U.S.C. § 1391(b)(1) ............................................................ 12

28 U.S.C. § 1391(b)(2) ......................................................... 13, 14

28 U.S.C. § 1401(a) ............................................................... 16

28 U.S.C. § 1404(a) ......................................................... 2, 14, 15

28 U.S.C. § 1404(b) ............................................................... 5

28 U.S.C. § 1406(a) ............................................................... 5

Cal. Code Civ. Proc. § 410.10 ..................................................... 6

# STATEMENT OF ISSUES

1. Whether Plaintiff satisfied its burden to prove that Defendant expressed aimed at and thereby purposefully directed its business activities at the state of California.

2. Whether Plaintiff satisfied its burden to prove that Bank resides in this judicial district.

3. Whether the entire sequence of events underlying Plaintiff's claims shows substantial events underlying the claims occurred in this judicial district.

4. Whether private and public interest factors to be considered when ruling on a 1404(a) motion to transfer favor the Southern District of New York over the Central District of California.

5. Whether Plaintiff has alleged a legally cognizable claim in Count III.

**FACTUAL BACKGROUND**

Plaintiff SITETOOLS, INC. ("Plaintiff" ) seeks a declaratory judgment that (1) Plaintiff owns the rights in and to the domain name <bansk.com> based on its alleged prior use of <bansk.com> in commerce and (2) Plaintiff's use of the domain name <bansk.com> does not infringe Defendant Bansk Group LLC ("Bansk")'s registered mark, Rn. 6,148,600, for the wording BANSK ("Bansk Mark"), as well as (3) a cancellation of, or alternatively, transfer to Plaintiff, the Bansk Mark. (Dkt. 1 ¶¶ 53-79.) Plaintiff is a California corporation based in Santa Monica, California that conducts a business of acquiring domain names that it believes has potential for commercial monetization, and developing websites for the domain names or directing traffic from the same to other websites. (*Id*. ¶¶ 8-9.) Plaintiff alleges, after acquiring the domain name <bansk.com>, it first used the domain name to advertise banking and financial services by re-directing internet traffic from <bansk.com> to <refinancemortgage.com> in March 2016. (*Id*. ¶¶ 11-15.) It further alleges that it used the domain name for the same purpose in years 2018, 2019, and 2021. (*Id*. ¶¶ 16-18.)

Bansk is a Delaware limited liability company that was formed in 2019. (Compl. ¶¶ 20-21; Mordan Decl. ¶ 5.) Bansk has its principal place of business in New York, New York. (Mordan Decl. ¶ 4.) According to Plaintiff, Bansk was already using the term 'bansk' at the time Bansk was formed in 2019. (Dkt. 1 ¶ 23.) Bansk filed the trademark application for its Bansk Mark on April 29, 2019, and the mark was registered with the U.S. Patent and Trademark Office on September 8, 2020. (*Id*. ¶¶ 26, 39.)

In January 2022, Bansk, through counsel, emailed Plaintiff to ask whether Plaintiff would be willing to sell the domain name <bansk.com>. (*Id*. ¶ 42.) In replying to the email, Plaintiff asked Bansk's counsel to make a compelling offer as to Bansk's potential purchase of the domain name. (*Id*. ¶ 46.) Upon Bansk's offer of $10,000 to purchase the domain name, Plaintiff did not respond to the offer. (*Id*. ¶¶ 47-49.) On November 2, 2022, Bansk's counsel emailed Plaintiff again with the same offer stating that Bansk is preparing

a complaint under the Anticybersquatting Consumer Protection Act (ACPA) and related laws regarding Plaintiff's ownership and use of the domain name. (Dkt. 1 ¶ 50; *see* Ex. A at 2-3.) Plaintiff engaged counsel, and on November 8, 2022, Plaintiff's counsel asked Bansk's counsel for substantive information about Bansk's potential claims against Plaintiff. (*Id.* ¶ 51; Ex. A at 2.) In reply to the request, on November 9, 2022, Bansk's counsel explained the bases of the claims and the remedies Bansk would be seeking in the potential suit should it file one. (*Id.* ¶¶ 51-52; Ex. A at 1.) All of the substantive discussions concerning the potential suit and the underlying claims of such suit were made between Bansk's counsel, who is based in Virginia, and Plaintiff's counsel, who is based in Pennsylvania. (*See generally* Ex. A.)

## ARGUMENT

### I.   LEGAL STANDARD

When a defendant moves to dismiss a case for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to prove that the court may properly exercise personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In the event "a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*, 2:13-cv-07086, 2014 U.S. Dist. LEXIS 59544 at *2 (C.D. Cal. 2014).

In addition, when a defendant moves to dismiss a case for improper venue under Rule 12(b)(3), "[t]he burden is on the plaintiff to show that venue is proper." *Ward v. Royal Caribbean Cruise Lines, Ltd.*, 8:08-cv-01077, 2009 U.S. Dist. LEXIS 10383, *4 (C.D. Cal. 2009). The plaintiff satisfies this burden when it "provides a 'prima facie showing of proper venue.'" *Id.* (quoting *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000)). "Analysis under Rule 12(b)(3) . . . permits the district court to consider facts outside of the pleadings." *Argueta v. Banco Mexicano, S.A.*,

87 F.3d 320, 324 (9th Cir. 1996). If the court determines that venue is improper, it may dismiss the case, or, if it is in the interests of justice, transfer the case to any district in which it properly could have been brought. 28 U.S.C. § 1406(a). The decision to transfer rests in the discretion of the court. 28 U.S.C. § 1404(b).

Federal Rule of Civil Procedure 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Moreover, "when certain documents are central to the claims and are referred to by the plaintiffs in the pleadings, they can be deemed part of the pleadings." *Pala Invs. Holdings Ltd. v. Alderox Can. Inc.*, Case No. CV 10-01789 AG, 2011 U.S. Dist. LEXIS 165280, *5 (C.D. Cal. 2011). Here, the email from Bansk's counsel to Plaintiff dated November 2, 2022, the email from Plaintiff counsel to Bansk's counsel dated November 8, 2022, and the email from Bansk's counsel to Plaintiff's counsel dated November 9 are referred to in Plaintiff's complaint in this case (the "Complaint") and are central to Plaintiff's claims that Bansk has made litigation threats to Plaintiff, which in turn created justiciable disputes or controversies that this Court to act on. A original copy of the emails are therefore part of Plaintiff's pleading for all purposes and the Court may consider them in ruling on Bansk's Motion to Dismiss.

For a plaintiff to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER BANSK

To establish that a court has personal jurisdiction over the defendant, the plaintiff must demonstrate both that the forum state's long-arm statute confers personal jurisdiction over the out-of-state defendant and that the exercise of jurisdiction does not violate federal constitutional principles of due process. *See Yeager v. Airbus Grp. SE*, Case Nos. 21-55162, 21-55776, 2022 U.S. App. LEXIS 10705, *2 (9th Cir. 2022). The California long-arm statute is coextensive with federal due process requirements. Cal. Code Civ. Proc. § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). "'Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same.'" *Boon Global Ltd. v. United States Dist. Court (In re Boon Global, Ltd.)*, 923 F.3d 643, 650 (9th Cir. 2019) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004)). California courts therefore need only consider federal due process requirements in determining the propriety of their exercise of personal jurisdiction over nonresident defendants. *See* Cal. Civ. Proc. Code § 410.10; *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

### A.   Personal Jurisdiction Does Not Comport with Due Process in This Case

Personal jurisdiction may be exercised over a non-resident party who has "minimum contacts" with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotation marks omitted). "Personal jurisdiction may be either general or specific." *Lanier v. Haynes*, Case No. 91-55505, 1992 U.S. App. LEXIS 23601, *4 (9th Cir. 1992). Without specifying which personal jurisdiction this Court may exercise against Bansk in this case, Plaintiff argues that the Court has personal jurisdiction solely because (1) Plaintiff is located in this judicial district, and (2) Bansk has directed litigation threats against Plaintiff concerning acts performed by it. (Dkt. 1 ¶ 5.)

### 1. General Jurisdiction

General jurisdiction is established if a defendant's contacts with the forum are "'so continuous and systematic' as to render [the defendant] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846 (2011)). Nevertheless, "[t]he standard for general jurisdiction is high" and "[a] defendant must not only step through the door, it must also '[sit] down and [make] itself at home.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006).

"The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). While absence of the aforesaid locations of a corporation often ends the general jurisdiction inquiry, an exceptional case may justify a state's exercise of general jurisdiction over the corporation *only if* its operations in the state "is so substantial and of such a nature as to render the corporation at home in that state." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). In this case, as Plaintiff Bansk is incorporated in the state of Delaware, and has its principal place of business in the state of New York (*See* Dkt. 1 ¶¶ 20-21; Mordan Decl. ¶¶ 4-5.) Plaintiff does not even allege that Bansk runs any business operation or has any business presence in the state of California. Therefore, Plaintiff failed to meet the high bar required to establish this Court's general jurisdiction over Bansk.

### 2. Specific Jurisdiction

Plaintiff cannot establish specific jurisdiction over Bansk either. "Specific jurisdiction is more limited in scope and can be exercised where the defendant has sufficient minimum contacts with the forum state, and the plaintiff's claims arise out of those contacts." *Shinde v. Nithyananda Found.*, EDCV 13-00363-JGB, 2014 U.S. Dist. LEXIS 197030, *10 (C.D. Cal. 2014). The Ninth Circuit has adopted a three-prong test

to determine whether a defendant has sufficient minimum contacts to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579-580 (9th Cir. 2011).

"If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). The party alleging the existence of personal jurisdiction bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff fails to satisfy either of the first two prongs, then personal jurisdiction cannot be established in the forum state. *Id*. In addition, "if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *see also Pebble Beach Co.,* 453 F.3d at 1155 ("[Plaintiff's] arguments fail under the first prong. Accordingly, we need not address [the remaining two prongs].").

The first prong "includes both purposeful availment and purposeful direction," and "[i]t may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). A purposeful availment analysis applies to suits sounding in contract whereas a purposeful direction analysis applies to suits sound in tort. *Schwarzenegger*, 374 F.3d at 802. In this case, Plaintiff alleges that Bansk directed threats of litigation against it, and on that basis, incorrectly argues that this Court has jurisdiction over Bansk. (Dkt. 1 ¶ 5.)

Because jurisdictional allegations based on Bansk's threats of litigation show that this suit sounds in tort and there exists no contractual dispute between the parties, the purposeful direction analysis is proper for the jurisdictional inquiry in this case.

Ninth Circuit courts generally inquire whether a defendant purposefully direct[ed] [its] activities at the forum state, applying the "the three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984)." *Schwarzenegger*, 374 F.3d at 803. The three-part test "requires that the defendant allegedly ha[s] (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. Courts' personal jurisdiction analysis "must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).

### a. Bansk Has Not Expressly Aimed an Activity at the State of California

In analyzing the second, express aiming, prong of the test, "courts must look to the defendant's own contacts with the forum state," and not on the plaintiff's connections to the forum. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017). "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection to the forum." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

It is well-established in this Circuit that "[a] cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo! Inc.*, 433 F.3d at 1208. There exist "strong policy reasons to encourage cease and desist letters," and the letters "are normally used to warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation." *Id*. Such letters may be the basis for personal jurisdiction *only if* they are "abusive, tortious, or otherwise wrongful." *Id*. at 1209 (emphasis added).

This Court's holding in *Vast Vantages, LLC v. Bhandari*, 2:21-cv-04896-MCS-MRW, 2021 U.S. Dist. LEXIS 220379, *3-7 (C.D. Cal. 2021) is instructive. In *Vast Vantages,* the defendant sent three requests to remove the defendant's product from Amazon to an email address associated with the plaintiff, and the defendant talked with the plaintiff's California-based counsel by telephone. *Vast Vantages, LLC v. Bhandari*, Case No. 2:21-CV-04896, 2021 U.S. Dist. LEXIS 220379, *4 (C.D. Cal. 2021). Holding that exercising specific jurisdiction based on the defendant's three email interactions with the plaintiff and one telephone interaction with its counsel would be inappropriate, the court in *Vast Vantages* noted "'it is improper to predicate personal jurisdiction on the act of sending ordinary cease and desist letters into a forum, without more.'" *Id*. (quoting *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1038 (Fed. Cir. 2017)). Moreover, the court further held that the defendant's "emails on their face do not evince any relation to the forum state: [d]efendant simply emailed [the] [p]laintiff's generic service email address three times over two months with information about his patent and requests to remove [the] [p]laintiff's product from Amazon" and that "[t]he communications are untethered to California in any respect other than the fact that [the] [p]laintiff is headquartered in California." *Id*. at 5.

Similarly in this case, Bansk's counsel contacted Plaintiff and Plaintiff's counsel via *email* by (1) offering Plaintiff $10,000 for the domain name's purchase price, (2) subsequently coming back with the same offer but this time warning Plaintiff that its continuing use of the infringing domain name will be faced with a legal proceeding, and (3), in response to Plaintiff's counsel's express request for such information,  explaining the bases of, the remedies for, the trademark claims Bansk would be alleging if such proceeding takes place. (Dkt. 1 ¶¶ 42, 46-52.) In sum, these emails together constitute nothing more than an ordinary cease and desist letter, majority of which were not event sent into the forum but to Plaintiff's Counsel in Pennsylvania. Furthermore, Bansk's counsel sent these emails precisely "to warn an alleged rights infringer that its conduct, if

continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation" under *Yahoo! Inc. Yahoo! Inc.*, 433 F.3d at 1208. Indeed, as in *Vast Vantages*, the emails here are "untethered to California in any respect other than the fact that [the] [p]laintiff is headquartered in California" as there was not a single mentioning of Bansk's activity in California, let alone of the word California, in the emails. Moreover, the emails cannot be abusive, tortious, or otherwise wrongful because Bansk's counsel explained the bases of Bansk's potential claims upon Plaintiff's request. In sum, the emails on their face do not evince any relation to the state of California to form the basis for this Court's personal jurisdiction.

b. *Bansk Neither Caused Nor Knew About Any Harm Likely to Be Suffered in California*

Bansk is incorporated in the state of Delaware, maintains its principal place of business in the state of New York, and has no business presence in the state of California. (Compl. ¶ 3; Mordan Decl. ¶¶ 4, 6-12; *see also* Ex. 1-3 to Mordan Decl. ¶ 14.) None of Bansk's officers, directors, employees or agents has been aware that Plaintiff is based in the state of California. (Mordan Decl. ¶ 13.) Indeed, Plaintiff does not even offer a single fact showing Bansk had any knowledge about any harm related to the state of California. Under these facts, Bansk could not have caused, and does not have any knowledge of, any harm that is likely to be suffered in the state of California.

Plaintiff may attempt to argue that Bansk's sending a cease & desist letter to a party in the forum state automatically constitutes "express aiming" by the reason of Plaintiff's connection with the forum state and that the Bansk's act is "individual targeting" of the forum resident under *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082. (9th Cir. 2000). However, the Ninth Circuit court in *Axiom Foods* noted the Supreme Court in *Walden v. Fiore*, 571 U.S. 277 (2014) refused the Ninth Circuit's conclusion in *Bancroft* that a defendant's "knowledge of [the plaintiffs'] 'strong forum connections,'" coupled with the "foreseeable harm" the plaintiff suffered in the forum, comprised sufficient

minimum contacts. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-1070 (9th Cir. 2017). In *Walden*, the Supreme Court held that the minimum contacts test "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. The Court continued by clarifying that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* "Following *Walden*, [the Ninth Circuit court] now hold[s] that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods, Inc.*, 874 F.3d at 1070.

In sum, as Plaintiff wholly failed to make a *prima facie* showing that Bansk expressly aimed its activities at the state of California and caused harm that it knows is likely to be suffered there, it did not satisfy its requisite burden to demonstrate that Bansk has purposefully directed its activities at the state of California to invoke this Court's specific personal jurisdiction. The lack of personal jurisdiction alone warrants the dismissal of this case.

## III.   VENUE IS IMPROPER IN THIS DISTRICT

### A.   Bansk Does Not Reside in This District

28 U.S.C. § 1391(b)(1) allows a civil action to be brought in "a judicial district in which any defendant resides." 28 U.S.C. § 1391(b)(1). Plaintiff appears to argue that venue is proper in this district under Section 1391(b)(1) because "a defendant in this action resides in this district." (Dkt. 1 ¶ 5.) However, Plaintiff admits in the Complaint that Bansk is a Delaware limited liability company, alleges Bansk does business in Wellesley, Massachusetts, and does not plead a single fact to show or even suggest Bansk resides in this district. (*See Id.* ¶ 3.) Thus, Plaintiff's own factual allegations about Bansk's residency demonstrate that Bansk does not reside or maintain any business presence in this judicial district (*see also* Mordan Decl. ¶¶ 4, 6-12.), contradicting its venue allegations by reason of Bansk's residency.

**B.**  Nor Did a Substantial Part of Plaintiff's Claims Arise in This District

Plaintiff appears to rely on Section 1391(b)(2) to argue that venue is proper in this district also because "a substantial part of the events or omissions giving rise to the claim occurred in this district." (Dkt. 1 ¶ 5.)  Section 1391(b)(2) provides "a civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

"In determining where a "substantial part" of the events occurred under Section 1391(b)(2), courts (1) 'examine the nature of the plaintiff's claims and the acts or omissions underlying those claims' and (2) 'determine whether substantial events material to those claims occurred in the forum district.'" *ALO, LLC v. Falsetti*, 2:18-cv-00208, 2018 U.S. Dist. LEXIS 43714, *9 (C.D. Cal. 2018) (quoting *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010)).  Courts must look "'not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim.'" *Id*. (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)).

In this case, Plaintiff claims that *bona fide* controversies on which this Court may grant declaratory relief arose from the alleged litigation threats made by Bansk's counsel, and admits that they were made *via email*. (Dkt. 1 ¶¶ 50-52; Ex. A.) That is, all relevant and substantive events giving rise to Plaintiff's claims that Bansk made litigation threats, especially concerning the bases of and remedies for its claims in a potential litigation, occurred by email and between Bansk's counsel based in Virginia and Plaintiff's counsel based in Pennsylvania. (*Id*.; Ex. A)

Even if we assume that Bansk's counsel's initial short email to Plaintiff on November 2 were also deemed a relevant event for purposes of the venue inquiry (it is not), that merely constitutes a single triggering event, and the majority of the triggering events constituting what Plaintiff describes as litigation threats occurred in the judicial district of Pennsylvania in which Plaintiff's counsel is based.

In short, under *ALO, LLC v. Falsetti,* Plaintiff's litigation threat claims and the acts or omissions underlying the claims are *online* by nature, and the events material to those claims essentially occurred in a judicial district in Pennsylvania, not in the Central District of California. Plaintiff thus failed to meet its burden to establish a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and venue is improper also under 28 U.S.C. § 1391(b)(2).

## IV.   ALTERNATIVELY, THIS CASE MUST BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

Instead of requiring dismissal and refiling of a suit where the alternative forum is another federal court, 28 U.S.C. § 1404(a) now permits transfer of a case from one federal district court to another "for the convenience of parties and witnesses in the interest of justice." *Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000). Section 1404(a) provides, in relevant parts:

> For convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The statute has two requirements on its face: "(1) that the district to which they seek to have the action transferred is one in which the action 'might have been brought;' and (2) that the transfer is '[f]or the convenience of parties and witnesses, [and] in the interest of justice.'" *Kia Motors Am., Inc. v. MPA Autoworks*, Case No. CASE NO. CV 05-4928-NM, 2005 U.S. Dist. LEXIS 49299, *10 (C.D. Cal. 2005).

Section 1404(a) partially "displaces the common law doctrine of *forum non conveniens*." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, Congress codified the term "for the convenience of parties and witnesses, in the interest of justice" in Section 1404(a) to "permit courts to grant transfers upon a lesser showing of inconvenience than the greater requirements of *forum non conveniens*." *Norwood v. Kirkpatrick*, 349 U.S. 29, 29 (1950).

In this case, the federal court for the Southern District of New York is where the instant action might, and should, have been brought because Bansk operates its principal place of business in New York, New York, and Plaintiff's claims concerning Bansk's alleged litigation threats were considered and authorized by the decision makers of Bansk in New York. Transfer to the Southern District of New York promotes the convenience of the parties and witnesses in this case. Relevant factors in courts' considering a motion to transfer under Section 1404(a) remains the same as they do with a motion to dismiss under the common law doctrine of *forum non conveniens*, but the discretion to be exercised by the courts is broader. *See Id*.

A.   Private Interest Factors Favor the Southern District of New York

The private interest factors to be considered in granting the motion to transfer are: the "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Decker Coal Co.*, 805 F.2d at 843 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839 (1947).).

Again, Plaintiff's claims concern Bansk's alleged trademark infringement cybersquatting claims against Plaintiff, which Plaintiff alleges to have created bona fide disputes or justiciable controversies on which the Court can act. Because Bansk operates its headquarters in New York, New York (Mordan Decl. ¶ 4; Ex. 1-3 to Mordan Decl. ¶ 14.) and presumably makes management-level decisions concerning intellectual property rights and claims from its headquarters, evidentiary documents and relevant witnesses in this case are located in New York, New York. As such, it would be much easier to access sources of proof and compel attendance of relevant witnesses in the federal court for the Southern District of New York than it would in the Central District of California. The cost of obtaining attendance of such witnesses would be cheaper in New York whereas

those witnesses would have to travel to the Central California region if the case proceeds in the region. For the same reasons, all other practical aspects of this case favor transfer to the Southern District of New York, rendering the progression of this case easy, expeditious, and inexpensive. The factor of the possibility of viewing premises is not germane to this case.

B.   Public Interest Factors Also Favor the Southern District of New York

The public interest factors to consider when courts decide the propriety of transferring the case under Section 1401(a) are: "'the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'" *Decker Coal Co.*, 805 F.2d  at 843 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252 (1981)).

In this case, we do not have any data concerning congestion in the courts in the two compared judicial districts. Thus, the administrative difficulty factor is neutral. The second factor favors the Southern District of New York, because the court in the judicial district has local interest in adjudicating the alleged bona fide disputes related to litigation threats allegedly made by a company operating its principal place of business in New York, New York. The third and fourth factors are not germane here as this is not a diversity case and the crux of Plaintiff's allegations in support of declaratory relief and other remedies arise from federal laws, and therefore there exists no issues concerning conflict of laws or foreign laws. The last factor also favors the Southern District of New York, as it would be unfair to burden citizens of Central District of California with jury duty solely because a New York-based company decided to send emails constituting a cease-and-desist letter twice to its counsel in Pennsylvania. In sum, both private and

public interest factors warrant the transfer to be made to the federal court in New York as it would be "for the convenience of parties and witnesses, in the interest of justice."

## V.    PLAINTIFF DOES NOT ALLEGE ANY LEGALLY COGNIZABLE CLAIM IN COUNT III

The gravamen of Plaintiff's Complaint appears to be that this Court should provide declaratory relief to Plaintiff because Bansk made certain litigation threats to Plaintiff, thereby creating *bona fide*, justiciable controversies on which the Court can rule. However, in Count III of the Complaint, Plaintiff also seeks other remedies that are unrelated to the declaratory relief or justiciable controversies namely, cancellation of Bansk's Mark, or transfer of the mark to Plaintiff, and statutory damages. (Dkt. 1 ¶¶ 78-79.) In Count III, Plaintiff merely alleges that it has been using the domain name <bansk.com> since at least 2013, and the "existence" of Bansk's trademark registered in 2020 creates a "probability" of consumer confusion "with Plaintiff's <bansk.com> domain name." (*Id*. ¶¶ 76-78.)

A court can "dismiss a complaint under Rule 12(b)(6) based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Nelson-Ceballos v. Fraser*, Case No. ED CV-19-01769-AB, 2020 U.S. Dist. LEXIS 258992, *9 (C.D. Cal. 2020) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "To prove trademark infringement, 'a trademark holder must show that the defendant's *use* of its trademark is *likely* to cause confusion, or to cause mistake, or to deceive.'" *Adobe Sys. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (emphasis added). In addition, a unregistered trademark holder must also show that the aforesaid likelihood of confusion exists "*as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person*." 15 U.S.C. 1125(a)(1)(A)[1].

---

[1] Even if we assume Plaintiff's domain name were a valid trademark, since it is not registered with the U.S. Patent and Trademark Office, the only trademark infringement claim that Plaintiff can make in this case is under 15 U.S.C § 1125(a).

In addition, one can only "establish enforceable trademarks rights through use of a trademark in commerce . . .." *Optimal Pets, Inc. v. Nutri-Vet*, LLC, 877 F. Supp. 2d 953, 958 (C.D. Cal. 2012). The term "<u>use in commerce</u>" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127.

> A mark shall be deemed to be use in commerce . . . on services when it is used or displayed in the sale or advertising of services *and the services are rendered in commerce*, or the services are rendered in more than one State or in the United States and a foreign country *and the person rendering the services is engaged in commerce in connection with the services*.

*Id*. (emphasis added). Indeed, the Ninth Circuit has consistently held that "only lawful use in commerce can give rise to trademark priority." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 931 (9th Cir. 2014) (citing *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007)).

Here, Plaintiff merely alleges that it has used the domain name <bansk.com> to <u>redirect internet traffic from the domain name to another third-party domain name</u> <refinancemortgage.com> in March 2016. (*Id*. ¶¶ 14-18.) Although Plaintiff also makes a naked allegation that the domain name was used to "advertise banking and financial services", it does not even allege whose banking or financial services the mark was used for. (*Id*. ¶ 12.) That is, even if we assume Plaintiff were referring to the banking or financial services of a third party entity that is related to the domain name <refinancemortgage.com>,  it does not even allege that who that third party is, and more importantly, whether the third party's "*services are rendered in commerce*" as required under the Lanham Act's definition of the term "use in commerce." As such, Plaintiff's use of the domain name <bansk.com> does not constitute "use in commerce," and it cannot establish any enforceable trademarks rights to begin with.

Second, Plaintiff here makes a threadbare allegation that Bansk Mark's <u>existence</u> (not use) creates a <u>probability</u> (not likelihood) of consumer confusion <u>with Plaintiff's domain name</u> (not as to the affiliation, connection, or association of Bansk with Plaintiff, or as to the origin, sponsorship, or approval of Bansk's goods, services, or commercial activities by Plaintiff). The allegation does not meet the requisite elements constituting any trademark infringement claim. Thus, even accepting as true all of Plaintiff's allegations in Count III, Plaintiff's claim based on these allegations are not legally cognizable. In essence, Plaintiff only seeks certain remedies presumably related to a trademark infringement claim, without pleading any underlying legal claim. Accordingly, Count III must be dismissed for failure to state a claim upon which relief can be granted under *Nelson-Ceballos*.

## CONCLUSION

For the foregoing reasons, Defendant BANSK GROUP LLC respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice for lack of personal jurisdiction and improper venue and Count III of the Complaint for failure to state a plausible claim, or in the alternative, transfer this case to the U.S. District Court for the Southern District of New York as it would be both fair and convenient for the parties and witnesses.

Dated: February 13, 2023

Respectfully submitted,

/s/ Lisa Tan
Lisa Tan (SBN 228326)
ltan@RUSSAKOWTAN.COM
RUSSAKOW & TAN, LLP
275 E California Blvd
Pasadena, CA 91106
Telephone: (626) 683-8869
Facsimile: (626) 683-8870

David Ludwig (*pro hac vice* forthcoming)
(Virginia Bar No. 73157)
dludwig@dbllawyers.com
Hyung Gyu Sun (*pro hac vice*)
hsun@dbllawyers.com
(Virginia Bar No. 93070)
DUNLAP BENNETT & LUDWIG 8300
Boone Blvd, Suite 550
Vienna, VA 22182
Telephone: (703) 777-7319
Facsimile: (703) 777-3656

*Attorneys for Defendant*
BANSK GROUP LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February 2023, I electronically filed the foregoing with the Clerk of Court using the Court's Electronic Filing System and therefore served it upon all counsel of record.

|  | /s/ Lisa Tan |
|--|--------------|
|  | Lisa Tan (SBN 228326) |
|  | ltan@RUSSAKOWTAN.COM |
|  | RUSSAKOW & TAN, LLP |
|  | 275 E California Blvd |
|  | Pasadena, CA 91106 |
|  | Telephone: (626) 683-8869 |
|  | Facsimile: (626) 683-8870 |
|  |  |
|  | David Ludwig (*pro hac vice* forthcoming) |
|  | (Virginia Bar No. 73157) |
|  | dludwig@dbllawyers.com |
|  | Hyung Gyu Sun (*pro hac vice*) |
|  | hsun@dbllawyers.com |
|  | (Virginia Bar No. 93070) |
|  | DUNLAP BENNETT & LUDWIG 8300 |
|  | Boone Blvd, Suite 550 |
|  | Vienna, VA 22182 |
|  | Telephone: (703) 777-7319 |
|  | Facsimile: (703) 777-3656 |
|  |  |
|  | *Attorneys for Defendant* |
|  | BANSK GROUP LLC |

# Exhibit A

On 11/9/22 3:13 PM, David Ludwig wrote:


Mr. Berryhill,

Thank you for your email. I have not made any threat; I have simply stated the fact that my client is preparing a complaint. In terms of the nature of that complaint, I have already informed you that it is an ACPA claim. As you are well aware, ACPA claims are based on trademark rights, so it likely comes as little surprise that my "mystery" client is the owner of a federal trademark registration for BANSK in connection with financial services (RN 6148600). Our claim is further based upon the fact that your client has been using bansk.com to forward traffic to its competing financial services website offering mortgage services, which constitutes bad faith use of the domain. Given that your client is located in the United States, if the complaint is filed, we would be filing *in personam* rather than *in rem*, which allows my client to seek not only transfer of the domain but also actual damages and attorney's fees.

Hopefully this assists you in evaluating your client's position and advising on whether they should avoid the risks and costs of litigation and engage in a reasonable offer for the sale of the domain name.

Best regards,
**David Ludwig – Partner**
**DUNLAP BENNETT & LUDWIG**
T: +1 703-777-7319 D: +1 571-252-3310

Cc: cristin <Cristin@johnberryhill.com>; MJ <mj@johnberryhill.com>
**Subject:** [EXT] Re: FW: Bansk.com domain inquiry


Dear Mr. Ludwig,

Your threat below has been forwarded to me by my client, who has registered the domain name for quite a few years on the basis of its correspondence to a common typographic variation of the generic word "banks".

It is somewhat difficult to advise my client since your threat does not identify any particular claim or basis on which you plan to file suit on behalf of this mystery client.

Accordingly, would it be possible for you to state the basis on which you believe this domain name to have been registered in violation of the ACPA, so that I might evaluate the claim and advise my client accordingly?

Sincerely,




```
John Berryhill, Ph.d. Esq.
204 East Chester Pike
First Floor, Suite 3
Ridley Park, PA 19078
+1.610.565.5601 voice/fax
john@johnberryhill.com
```


**From:** David Ludwig <>
**Sent:** Wednesday, November 2, 2022 12:39 PM
**To:** Philip Ancevski <philip@sitetools.com>
**Subject:** RE: Bansk.com domain inquiry



Mr. Ancevski,


I hope this message finds you well. My client is preparing a complaint under the Anticybersquatting Consumer Protection Act and related laws regarding your company's ownership and use of the bansk.com domain. Before proceeding with that suit, my client wanted me to reach out one more time to see if you

would like to avoid the costs of litigation and discuss a reasonable sale of the domain. Our prior offer of
$10,000 is still on the table, and we would entertain any reasonable counter-offer.
Please let me know. Thanks.

Best regards,

**David Ludwig – Partner**

**DUNLAP BENNETT & LUDWIG**
T: +1 703-777-7319 D: +1 571-252-3310