1  Michael A. Long, Esq. (SBN: 266555)
2  [mlong@aexius.com]
   LONG & ASSOCIATES
3  1920 Hillhurst Avenue, #1139
   Los Angeles, CA 90027
4  T: (310) 625-3395
5  F: (213) 915-3133
   *Counsel for Plaintiff, SITETOOLS, INC.*
6

7  John B. Berryhill (*Admitted Pro Hac Vice*)
   [john@johnberryhill.com]
8  John B. Berryhill LLC
9  204 East Chester Pike
   First Floor, Suite 3
10 Ridley Park, PA 19078
11 +1.610.565.5601 voice/fax
   *Counsel for Plaintiff, SITETOOLS, INC.*
12

13         **UNITED STATES DISTRICT COURT**

14         **CENTRAL DISTRICT OF CALIFORNIA**

15 | SITETOOLS, INC., a California | Civil Case No.:  2:22-cv-08263-DMG-PVC |
16 corporation, | **[*Assigned to the Honorable Dolly M. Gee*]**

17                    Plaintiff, | **OPPOSITION OF PLAINTIFF**
                                   **SITETOOLS, INC TO DEFENDANT'S**
18         vs. | **SECOND MOTION TO DISMISS**

19 BANSK GROUP LLC, a Delaware | *[Concurrently filed with Request for*
20 corporation, | *Judicial Notice; [Proposed] Order*
                    Defendant. | *Granting Request for Judicial Notice;*
21 | *Declaration of Philip Ancevski;*
22 | *Declaration of John B. Berryhill;*
23 | *Declaration of Michael A. Long]*

24 | Date: March 24, 2023
25 | Time: 9:30 am
   | Ctrm: 8C
26 | Complaint Filed: November 12, 2022
27

---
--
**OPPOSITION OF PLAINTIFF SITETOOLS, INC.**
**TO DEFENDANT BANSK GROUP LLC'S SECOND MOTION TO DISMISS**

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................1

II.    LEGAL STANDARD ...........................................................2

III.   SPECIFIC JURISDICTION EXISTS ..................................2

    A.    Direct And Specific Contacts Are Established With The Forum Because Mr. Ludwig Acted As An Agent Of Defendant Bansk Group, The Principal, To Purchase <Bansk.com>, Not To Offer To Settle A Claim ......................................................2

    B.    Specific Jurisdiction Over The Out-of-State Defendant Is Proper Under California's Long-Arm Statute ...........................4

    C.    Exercise of Jurisdiction Does Not Violate Federal Constitutional Principles of Due Process..............................5

    D.    A "Case Or Controversy" Exists Because The Threat Of Lawsuit Was Credible For Purposes Of Threatening The California-Based Plaintiff By Creating A Real And Reasonable Apprehension ........7

    E.    Defendant's Threats of Litigation Unless Plaintiff Sold the Domain Name Meets the Standard of Requisite Contacts in California to Warrant Jurisdiction ......................................9

IV.   GENERAL JURISDICTION IS PROPER WHERE REASONABLENNESS IS MET; THEREFORE, THE MINIMUM CONTACTS TEST IS SATISFIED............................................11

V.    DEFENDANT IS IN DEFAULT FOR FAILURE TO COMPLY WITH COURT ORDERS AND THE MEET AND CONFER REQUIREMENTS OF LOCAL RULE 7-3; AND DISREGARD IS WARRANTED UNDER LOCAL RULE 7-4 ...........................18

    A.    Defendant Failed To Comply With Local Rule 7-3 In Its First Motion To Dismiss And Repeated The Same Failure In Its Second

**Motion To Dismiss, Which Has Been Noted By The Court As Deficient and Warrants Being Stricken or Disregarded** ...............**18**

**VI.**   **DEFENDANT'S THIRD CLAIM IS LEGALLY COGNIZABLE** ........**19**

  **A.**   **Defendant Disregards Plaintiff's ACPA Claim**............................**19**

  **B.**   **Plaintiff's Use Of Bansk.com Is Lawful, Protected Trademark "Use" Under The Lanham Act**........................................................**20**

**VII.**   **CONCLUSION** .............................................................................**21**

# TABLE OF AUTHORITIES

**Cases**

*American Telephone Telegraph Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir. 1996)...........................................................................................10

*Brookfield Commc'ns* , 174 F.3d at 1047 ................................................................19

*Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984)............................................8

*Calvert v. Huckins,* 875 F.Supp. 674, 678 (E.D.Cal. 1995) ...................................11

*Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)................2

*Clearly Food & Beverage Co. v. Top Shelf Bevs., Inc.*, 102 F.Supp.3d 1154, 1161 (W.D. Wash. 2015) .................................................................................................12

*DC Comics v. Towle*, 989 F. Supp. 2d 948, 957 n.2 (C.D. Cal. 2013)...................18

*GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 n. 3 (9th Cir. 2000)......18

*Grupo Gigante SA De CV v. Dallo & Co., Inc.* , 391 F.3d 1088, 1093 (9th Cir. 2004) ......................................................................................................................19

*Hakakha v. Quality of Life Health Corp.*, No. B192716, at *1 n.4 (Cal. Ct. App. Sep. 18, 2008) .........................................................................................................3

*Hal Roach Studios, Inc. v. Richard Feiner Co., Inc.,* 896 F.2d 1542, 1555-56 (9th Cir. 1990) ...............................................................................................................6

*Halicki Films, LLC v. Sanderson Sales and Mktg.,* 547 F.3d 1213, 1225–26 (9th Cir. 2008) .............................................................................................................18

*In re Goodrich*, 422 B.R. 724, 726 n.3 (Bankr. D. Ariz. 2010)...............................3

*In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).....................1

*Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1007 (N.D. Cal. 2009)..........................................................................................................10

*Mutual Life Ins. Co. v. Hilton-Green*, 241 U.S. 613, 622-23 (1916) .......................3

*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998) .................3

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) ...........................2

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) .........................4

*Pocketbook International SA v. SiteTools, Inc., et al.* (Case No. 2:20-cv-08708-DMG-PD) .................................................................................................18

*Rhoades v. Avon Prods., Inc.,* 504 F.3d 1151, 1157 (9th Cir. 2007)........................7

*Sengoku Works v. RMC Int'l,* 96 F.3d 1217, 1219 (9th Cir. 1996) .........................19

*Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)........................................2

*Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) .............14

*Tech Heads, Inc. v. Desktop Serv. Ctr.*,105 F. Supp. 2d 1142, 1151 (D. Or. 2000)14

*Walen v. Fiore* 571 U.S. 277 (2014)........................................................9

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,952 F. Supp. 1119, 1124 (W.D. Pa. 1997 14

**Rules**

Fed. R. Evid. 201(b)...........................................................................12

Local Rule 7-3...................................................................................17

Local Rule 7-4...............................................................................16, 18

## <u>OPPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Defendant's second motion to dismiss lacks merit, being substantively and procedurally defective. The motion should be DENIED in its entirety because:

- The motion fails to comply with Local Rule 7-3 as recognized by this Court (DN 29). Defendant filed its second motion without complying with the Rule and attempted to force Plaintiff's counsel into participating in an untimely meet and confer after the 7 days had already lapsed; and therefore, Defendant is in **default**;

- As pled, the threat was premised on SiteTools' activities conducted in California, and threatened that they would pursue an *in personam* case against SiteTools.  Hence, the infringing/cybersquatting activity against which the defendant was threatening to take action is located in California;

- In procuring the fraudulent registration, Defendant provided a copy of a business card bearing their domain name <banskgroup.com>[1]; and

- Systematic and continuous contacts with the forum exist.

The second motion to dismiss (DN 25) should be STRICKEN and the defendant found in default. The Complaint pleads facts giving rise to personal jurisdiction. If an amendment to state jurisdictional facts is needed, Plaintiff *in the*

---

[1] A trademark file history is properly considered on a motion to dismiss if the trademark is pleaded. "Documents attached to the complaint or incorporated by reference may be considered by a court in ruling a 12(b)(6) motion to dismiss." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014)

**OPPOSITION OF PLAINTIFF SITETOOLS, INC.
TO DEFENDANT BANSK GROUP LLC'S SECOND MOTION TO DISMISS**

*alternative* then will request: (a) leave to amend the complaint, if required, to add jurisdictional facts;[2] and (b) leave to conduct limited jurisdictional discovery.[3]

## II.   LEGAL STANDARD

Where the motion to dismiss under 12(b)(6) is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) Accordingly, a court only "inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegation of its complaint," uncontroverted allegations in the complaint must be taken as true. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Factual disputes are resolved in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).")

## III.   SPECIFIC JURISDICTION EXISTS

### A. Direct And Specific Contacts Are Established With The Forum Because Mr. Ludwig Acted As An Agent Of Defendant Bansk Group, The Principal, To Purchase <Bansk.com>, Not To Offer To Settle A Claim

Defendant initially contacted the Plaintiff, in a communication specifically addressed to Plaintiff's principal, Mr. Ancevski, stating:

---

[2] "Request for leave to amend should be granted with 'extreme liberality,'" *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009)).

[3] Facts to be discovered include: locations of investors and funds in California; sales activity in California; use of the Defendants' online portal to conduct business in California; and any other appropriate jurisdictional discovery.

> "I represent a party that is interested in acquiring the bansk.com
> domain name. ***Based on the whois records***, I believe SiteTools
> currently owns this domain. Kindly let me know if your company
> would be willing to sell this domain, and if so, what your asking price
> is."

(Ancevski Decl., ¶ 17, Exh L (emphasis added)). This communication did
not advance a legal claim.  This communication did not offer to settle a
legal claim.  In fact, Mr. Ludwig does not state in what capacity he
represented "a party that is interested in acquiring the bansk.com domain
name," nor does he identify himself as an attorney. This communication
was an inquiry directed to purchasing the bansk.com domain name from the
Plaintiff.  This communication reserved no rights to any unstated legal
claim, but requested an "asking price."

The communication states it was directed to Mr. Ancevski, "Based
on the whois records" which clearly identified Sitetools as the longstanding
registrant of the domain name; and the same whois records clearly show
Sitetools is located in California. (Ancevski Decl., ¶ 5, Exh A; RJN, Exh.
J). Defendant's claim that it somehow did not know Plaintiff Sitetools is
located in California is difficult to square with the initial communication
from Mr. Ludwig stating that he believed Sitetools was the registrant
"[b]ased on the whois records" which unambiguously also identify Plaintiff
Sitetools as being located in California.  It is not credible that Mr. Ludwig
would have gleaned Mr. Ancevski's name, Company and email address
from the same whois record which provides the location of Mr. Ancevski
and Plaintiff Sitetools.

Defendant had to research the owner of the <bansk.com> through a WHOIS
domain lookup, which shows ownership in California. (*Id.*). Mr. Ludwig

admittedly researched the WHOIS record for <bansk.com> and knew SiteTools was located in California. (Ancevski Decl., ₱17, Exh L).

In doing so, Mr. Ludwig was an agent of Bansk Group, the principal, not offering to settle a claim. Mr. Ludwig's knowledge is the same as the principal's knowledge Ludwig is informed of Sitetools, Inc. as owner of the targeted web domain property <bansk.com> and its CEO Mr. Ancevski as the contact located in California. *In re Goodrich*, 422 B.R. 724, 726 n.3 (Bankr. D. Ariz. 2010); *Mutual Life Ins. Co. v. Hilton-Green*, 241 U.S. 613, 622-23 (1916); see also, *Hakakha v. Quality of Life Health Corp.*, No. B192716, at *1 n.4 (Cal. Ct. App. Sep. 18, 2008)

This action proceeds directly from the escalation to the threat of imminent suit against the Plaintiff which arises from the Defendant's dissatisfaction that the Plaintiff did not accept Defendant's offer to purchase the domain name, which was intentionally and knowingly directed to the Plaintiff in this judicial district.

### B. Specific Jurisdiction Over The Out-of-State Defendant Is Proper Under California's Long-Arm Statute

California's long-arm statute authorizes specific personal jurisdiction over nonresident defendants to the full extent permitted by constitutional due process of law. *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998). The Court has specific personal jurisdiction over nonresident defendants if three requirements are met:

>    (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>    (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and
>    (3) exercise of jurisdiction must be reasonable.

*Id.* at 1320. Mr. Mordan's declaration intentionally neglects to mention that Bansk Group LLC is an investment company that currently and will direct its investments into California, takes benefits and protections of California's laws to gain profits, and owns and controls entities that regularly do business in California. (Ancevski Decl., ¶¶ 7 & 8-16, Exhs D-K; RJN, Exhs A-E & G-I). The omission of this fact is materially false, misleading and is fatal to their motion to dismiss. In fact, Bansk Group LLC's financial interests are geographically widespread and encompass California, doing business with major retailers such as Sephora which is headquartered in California. (*Id.*)

The claim arises directly out of forum-directed activities, including threats and contacts with the forum (*Id.*) Further, Bansk Group LLC's ownership and control of Amika, which previously owned and controlled Sephora until Bansk Group LLC acquired it, is clearly directed into California. (*Id.*)

### C. Exercise of Jurisdiction Does Not Violate Federal Constitutional Principles of Due Process

"For due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). "In this circuit, we employ the following three-part test to analyze whether a party's 'minimum contacts' meet the Supreme Court's directive. This 'minimum contacts' test is satisfied when: (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." (*Id.*)

Here, Bansk Group LLC directs its activities into California, affording itself the privileges afforded to all businesses in the state, including pass-through taxation; assertion of the Lanham Act to be enforced in California by seeking preclude use by a California company of the domain; seeking to preclude use of the domain which is hosted in California; seeking to increase its presence nationally including in California; and by making its online investment portal using the BANSK mark via <banskgroup.com> directly accessible in California. (*Id.*)

Defendant also misleads this Court by claiming it does not pay income taxes in California and wants to commit fraud on this Court. (Mordan Decl., ¶ 9)[4] Defendant materially omits the fact that it owns many subsidiaries which do business in California. For example, Defendant acquired Amika, which regularly and systematically does business in California by selling its hair care products in Sephora retail stores located throughout California; and Defendant also acquired Eva NYC, which also regularly and systematically does business in California by selling its hair care products throughout California through over 70 California retail stores. (Ancevski Decl., ¶¶ 7 & 8-16, Exhs D-K ; RJN Exhs. A-E & G-I) Amika and Eva NYC are subject to California sales laws, including tax laws, which is a tax liability of its owner and controlling interest holder, Bansk Group, LLC by virtue of such ownership and control of majority stakes in their subsidiary companies. (*Id.*) Defendant's investments and stakes in these businesses in California are not unrelated contacts, but they are precisely the business for which the Defendant's claims rights in the alleged "BANSK" mark for "Providing venture capital, development capital, private equity and investment funding", (Complaint ¶ 26) and these contacts are hence directly related to the instant action involving assertion of the Defendant's alleged mark.   Defendant's conduct of

---

[4] This is a material misrepresentation in violation of Rule 11.

business in California allows for related, minimum contacts to be met, thus tethering this Court's jurisdiction over this case and the Defendant.  Additionally, the Defendant admits that it initiated contact with Plaintiff in order to purchase the domain name from the Plaintiff (Ancevski Decl., ℙ17, Exh L), and thus the instant action further arises from what the Defendant claims now merely to have been a proposed purchase from the Plaintiff in California.  The first and second prongs are satisfied.

Exercise of jurisdiction is reasonable in light of Defendant's threats to litigate Plaintiff's use of the domain. (Ancevski Decl., ℙℙ 17-19, Exh L; Berryhill Decl., ℙ 3-7, Exhs A-E). Not only would it unreasonable to transfer this case to the Southern District of New York where Plaintiff does not do business, it would be largely inconvenient for the California-based Plaintiff to defend in a court across the county. (Ancevski Decl., ℙ4 & 17-18). Plaintiff does not do business in New York, unlike Defendant who does business in both states and around the country including in California. (Ancevski Decl., ℙ 4 & 17-18; Mordan Decl., ℙ4; RJN, Exhs A-E & G-I). It would be an injustice for the local California-based Plaintiff and nationwide Defendant who does business in California to require litigation outside California in another venue. It would prejudice Plaintiff's due process rights, having been threatened in California, for this case to be transferred to New York. Due process is not violated by filing the lawsuit under this circuit by permitting a non-resident to avoid jurisdiction in the threatened venue; therefore, jurisdiction is proper.

**D.    A "Case Or Controversy" Exists Because The Threat Of Lawsuit Was Credible For Purposes Of Threatening The California-Based Plaintiff By Creating A Real And Reasonable Apprehension**

"[A]n action for a declaratory judgment that a patent [or trademark] is invalid, or that the plaintiff is not infringing, [presents] a case or controversy if the

plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Hal Roach Studios, Inc. v. Richard Feiner Co., Inc.,* 896 F.2d 1542, 1555-56 (9th Cir. 1990) "The acts of the defendant [a]re instead to be examined in view of their likely impact on competition and the risks imposed upon the plaintiff, to determine if the threat perceived by the plaintiff were [sic] real and reasonable. [citations] … to state 'an actual controversy . . . [a] threat of infringement does not have to be said in so many words. It can be expressed in the attitude of the defendant as expressed[, for example,] in "circumspect language in a letter." ' " *Rhoades v. Avon Prods., Inc.,* 504 F.3d 1151, 1157 (9th Cir. 2007).

Defendant's letter sought to compete with the use by stopping its use and appropriating for itself the ownership and use of the domain bansk.com. Defendant threatened Plaintiff to demand, under threat of lawsuit, to buy Plaintiff's domain <bansk.com>. (Ancevski Decl., ¶¶ 17 &19, Exh. L) Defendant's counsel Mr. Ludwig claimed that his client, Defendant, is merely looking to purchase without actually providing a price, which was not an actual offer because the price term was missing.

After Plaintiff respectfully declined an eventual offer, Mr. Ludwig advised that his client was preparing a complaint based on trademark rights. (Berryhill Decl., ¶ 4, Exh. B). Mr. Ludwig offered his hopes that knowledge of the nature of the complaint would assist in reconsideration so as to "avoid the risks and costs of litigation." (*Id.*)

Mr. Ludwig then proceeded to discuss semantics over whether his emails constituted a threat, which he unsurprisingly thought against and described the conversation as settlement communications, presumably seeking to resolve a disputed legal claim, while also failing to identify any legal claims. Mr. Ludwig's

claims are without merit and are contrived as legal fiction. Defendant falsely claims lack of knowledge, which is not the legal standard.

These events raised a real and reasonable apprehension in Plaintiff of a claim, however lacking in merit, particularly since there was a threat of seeking damages and attorneys' fees. (Berryhill Decl., ¶¶ 3-7, Exhs. A-E; Ancevski Decl., ¶¶ 17 & 19 Exh L) While Plaintiff does not concede those threats have any merit, Plaintiff's rightful use of the mark and web domain <bansk.com> are threatened, prompting this lawsuit to be filed against Defendant in this jurisdiction, and rightfully so.

### E.   Defendant's Threats of Litigation Unless Plaintiff Sold the Domain Name Meets the Standard of Requisite Contacts in California to Warrant Jurisdiction

Defendant's moving papers insist that the prospect of harm was not realized, stating that it has no business presence in the state of California. (Mordan Decl., ¶¶6-9, & 11-13) This ignores and conceals Bansk Group's ownership of Amika and Eva NYC selling its products throughout California. (Ancevski Decl., ¶¶10-18, Exhs. D-K-I; RJN, ¶¶ 1-9, Exhs. A-F, H-I; RJN, Exhs A-H). The claim that there was no direct knowledge as to Plaintiff's business relations in the state of California sidesteps the real knowledge of where this lawsuit would be filed since emails between counsel prior to the filing of this lawsuit indicated Ninth Circuit claims. (Berryhill Decl., ¶7, Exh. D). Apart from already having knowledge that Plaintiff does business in California, Defendant was also aware of where jurisdiction would take place. Defendant was further aware that Plaintiff's counsel represented the Plaintiff, in California. Defendant was not attempting to deal with Plaintiff's counsel in some personal capacity in Pennsylvania any more than

Defendant's counsel's location in Virginia suggested that Defendant is somehow located in Virginia.

Defendant relies on *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984) and references the "three-part test" to assert that individualized targeting does not support specific personal jurisdiction and in so references the cease and desist letter sent by Defendant, stating further that "Courts' personal jurisdiction analysis 'must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum.'" (DN 25-1 at 9, ¶¶10-12)

The subject matter of the three-part test as referenced in *Calder* is associated with a libel tort where the California-based Respondent claims to have been libeled by Petitioners who resided in Florida. Not only does the jurisdictional effect of libelous statements have nothing to do with the declaratory judgment sought here in a trademark dispute, but *Calder* was also eventually overruled by *Walen v. Fiore* 571 U.S. 277 (2014). Defendant's arguments as to the supposed lack of specific jurisdiction are therefore upended by bad case law and the incongruency between the claims of this lawsuit and those described in *Calder*.

Defendant's emails constitute abusive and threatening conduct – facts that support a finding of specific jurisdiction. The emails sent by Defendant's counsel were not meaningfully meant to address infringing conduct, and instead used threats of legal action after their offer was declined. Taken in connection with Defendant's offer for what is an immediately and prospectively valuable domain name, such emails can only be received as a bullying tactic used to posture for a lawsuit such as this. Defendant's "offer" to purchase the domain name from a California entity is a predatory tactic to forcefully acquire use of the mark at a discount by constructing a proposed sale around which to build a cybersquatting claim.

Defendant's course of business in California that makes specific jurisdiction proper. Defendant's assertion of the three-prong test lacks authority here in the Ninth Circuit. The facts show sufficient contacts with California. Defendant owns and controls Amika and Eva NYC; each of them substantially, regularly and systemically sell and operate through retail stores throughout the forum states, California. (Ancevski Decl., ¶¶ 8-16, Exhs. D-K; RJN Exhs. A-E & G-H). Further, the ownership interests of the entities make them virtually indistinguishable on the basis of Defendants' control of the entities directing activities regularly into California. The threshold for the required activity for personal and/or minimum contacts in both specific and general jurisdiction is therefore satisfied.

Defendant claims they did not know that Plaintiff was based in California. (Mordan Decl., ¶ 13). This claim is incredulous. Defendant to even reach out to the Plaintiff had to research the owner of the bansk.com domain (through a WHOIS domain lookup) which shows ownership in California. (Ancevski Decl., ¶ 5, Exh A; RJN, Exh. J). Mr. Ludwig researched the WHOIS record for <bansk.com> and knew SiteTools was located in California. (Ancevski Decl., ¶17, Exh L). Defendant proceeded to make demands and shakedown the California-based Plaintiff in order to acquire the wanted domain for its company name "Bansk Group" so it could obtain the short five-letter domain name <bansk.com>. Defendant threatened to stop Plaintiff from using the domain in California by forceful legal process, to transfer the domain. SiteTools, Inc. is based in California, a fact not hidden from the public. (*Id.*)

## IV.  GENERAL JURISDICTION IS PROPER WHERE REASONABLENNESS IS MET; THEREFORE, THE MINIMUM CONTACTS TEST IS SATISFIED

The Ninth Circuit has adopted a "flexible approach" that may allow personal jurisdiction with a lesser showing of minimum contacts where dictated by

considerations of reasonableness. *Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1007 (N.D. Cal. 2009) In the present case, credible threats were made by Defendant through its attorney, citing to damages and attorneys' fees, along with the clearly threatened preparation of a complaint, alone make jurisdiction reasonable. (Ancevski Decl., ¶¶ 17 & 19, Exh L; Berryhill Decl., ¶¶ 3-7, Exhs A-E). Taken together with the additional activities of Bansk Group's subsidiaries regularly conducting sales in California retail stores, the contacts are sufficient to establish proper grounds for specific or general jurisdiction. (Ancevski Decl., ¶¶ 8-16, Exhs D-K; RJN, Exhs A-E & G-H).

A subsidiary and its parent are no longer separate entities where there is (1) unity of interest and ownership and (2) failure to disregard their separate identities would result in fraud or injustice. *American Telephone Telegraph Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir. 1996) (citations omitted). The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary "to such a degree as to render the latter the mere instrumentality of the former." *Calvert v. Huckins,* 875 F.Supp. 674, 678 (E.D.Cal. 1995)

The combined effect of the acquisition of Amika and Eva NYC and restructuring with its partner, Chris V. Kelly, as its director, demonstrates control of not just Amika, but also Eva NYC, thus extending Defendant's sphere of influence further throughout the United States and more so prominently in California. (Ancevski Decl., ¶ 10, Exh. F; RJN Exhs G & I) These three entities are unified beyond distinction for purposes of jurisdictional analysis.

In consideration of this, Mr. Mordan's declaration deliberately failed to disclose Bansk Group's majority controlling interest in Amika and Eva NYC. (Ancevski Decl., ¶¶8 & 9, Exh F; RJN Exhs G & I). As a result, failure to recognize Defendant's interests with its subsidiaries as unified would promote an

**OPPOSITION OF PLAINTIFF SITETOOLS, INC.**
**TO DEFENDANT BANSK GROUP LLC'S SECOND MOTION TO DISMISS**

1  injustice and work a fraud on this Court. The Notices of Interested Parties also

2  failed to disclose Bansk Group's majority controlling interest in Amika and Eva

3  NYC. (Ancevski Decl., ₱₱ 8-9, Exh D & E; RJN Exhs G-H). The distinction

4  between and amongst these entities have been blurred after such acquisition to the

5  point that their former CEOs are no longer the top executive (CEO) of Amika and

6  Eva NYC respectively, and Bansk Group has installed a single, new CEO to

7  control both of these acquired entities, Amika and Eva NYC – which also creates

8  unity of interest of both of these acquired entities. (Ancevski Decl., ¶ 9, Exh. E  at

9  5 (new CEO of both Amika and Eva NYC); RJN, Exh. G) Defendant controls and

10  directs activities through its partner and director Mr. Kelly into all states, including

11  California which is part of its Bansk presence online and directed to California's

12  retail stores. (*Id.*) Based on these facts, it is reasonable to exercise jurisdiction

13  because it is foreseeable that they would be haled into court in any of the

14  jurisdictions in which they conduct the venture capital and investment business in

15  which the Defendant claims its rights in the "BANSK" mark to have arisen, and

16  Defendant does so in California, extensively, by and through its controlling

17  ownership and actual partner directing activity thereby, and consistent with the

18  services underlying the Defendant's claimed trademark.

19      The <banskgroup.com> website address was noted on the business card in

20  the USPTO file history.  The business card and the trademark file are noted in the

21  complaint. (DN 1, ₱33). That specimen can be retrieved from the USPTO TSDR

22  system. (See also Ancevski Decl., ₱6, Exhibit B) Additionally, the TSDR report is

23  a matter of public record and appropriate for judicial notice. See Fed. R. Evid.

24  201(b); see also *Dahon N. Am., Inc. v. Hon*, No. 2:11-CV-05835-ODW (JCGx),

25  2012 WL 1413681, at *8 n.4 (C.D. Cal. Apr. 24, 2012) (taking judicial notice of

26  documents filed on the United States trademark website); see also *Clearly Food &*

27  *Beverage Co. v. Top Shelf Bevs., Inc.*, 102 F.Supp.3d 1154, 1161 (W.D. Wash.

2015) (taking judicial notice of trademark applications obtained from the U.S. Patent and Trademark Electronic Search System); *Sebastian Brown Prods. LLC v. Muzooka* Inc., No. 15-cv-1720-LHK, 2016 WL 5910817, at *2 n.1 (N.D. Cal. Oct. 11, 2016) (judicially noticing TSDR documents).

Hence, the <banskgroup.com> address is part of the brand identification upon which issuance of the trademark was premised, and the Plaintiff's claim (and defendant's threat) is directly relevant to online use of the (a) the Defendant's alleged mark and (b) the Defendant's claim against the Plaintiff's registration and use of the domain name giving rise to the action here. Mordan's declaration additional relies on part of the Defendant's website, referenced in the specimen provided by the Defendant to the USPTO, and which further includes an investor login portal. (Ancevski Decl., ℙ 6, Exh B; RJN, Exh J).

The Mordan Declaration conveniently omits this aspect of the web site otherwise referenced therein. Accordingly, the interactive website including an "investor portal" accessible in California relates directly to (a) the conduct of services which the defendant recites in its registered mark "Providing venture capital, development capital, private equity and investment funding" and (b) to the defendant's claim that Plaintiff's conduct of business in California gives rise to the action threatened by the Plaintiff.  In contrast, the Plaintiff conducts no business and provides no service denominated as "Bansk" in New York, as proposed by the Defendant, and hence there is, on balance, much less of a mutual connection with the forum proposed by the defendant as more appropriate.

As alleged in the Complaint ¶32, Defendant submitted a "Statement of Use" to the United States Patent and Trademark Office (USPTO) on June 26, 2020, in order to procure registration of its alleged mark.  (Ancevski Decl., ℙ 6, Exh B; RJN, Exh J). The USPTO TSDR system is a matter of public record and appropriate for judicial notice. *See Fed. R. Evid. 201(b)*; see also *Dahon N. Am.,*

*Inc. v. Hon, No. 2:11-CV-05835-ODW (JCGx), 2012 WL 1413681, at \*8 n.4 (C.D. Cal. Apr. 24, 2012)* (taking judicial notice of documents filed on the United States trademark website); s*ee also Clearly Food & Beverage Co. v. Top Shelf Bevs., Inc.*, 102 F.Supp.3d 1154, 1161 (W.D. Wash. 2015) (taking judicial notice of trademark applications obtained from the U.S. Patent and Trademark Electronic Search System); *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-cv-1720-LHK, 2016 WL 5910817, at \*2 n.1 (N.D. Cal. Oct. 11, 2016) (judicially noticing TSDR documents).

The Defendant's Statement of Use, and indeed the Mordan Declaration Exhibit 2, reference the Defendant's internet address at <banskgroup.com>. Inspection of Exhibit 2 to the Mordan Declaration shows a link denominated "Partner Login". An "Investor Portal" login page may be found by proceeding more deeply into the Defendant's website at <banskgroup.com>[5]. (Ancevski Decl., ₱ 7, Exh C; RJN, Exh K). Accordingly, it is apparent that the Defendant's services for which it claims rights in the alleged "BANSK" mark, and thereby entitlement to Plaintiff's domain name, are conducted in part through an interactive website accessible in this judicial district.  The apparent conduct of investor relations, which are integral to the services in which the Defendant claims rights, are thus

---

[5] The Ninth Circuit has imputed the contacts of an agent to its principal corporation where there was a subsidiary or employer-employee relationship. See, e.g., *Wells Fargo Co.*, 556 F.2d at 419-20 (noting that while the mere existence of a principal-subsidiary relationship is insufficient to establish jurisdiction through apparent authority, "establishment of the requisite 'agency' control may be even easier when a [principal]-subsidiary relationship is involved."); *Sher*, 911 F.2d at 1362 (employer-employee); *Myers*, 238 F.3d at 1073 (employer-employee); *Bauman v. DaimlerChrysler Corp.*, No. 07-15386, 2011 WL 1879210, \*8 (9th Cir. Aug. 6, 2010) (subsidiary).

**OPPOSITION OF PLAINTIFF SITETOOLS, INC.
TO DEFENDANT BANSK GROUP LLC'S SECOND MOTION TO DISMISS**

apparently carried out in part through an interactive website through which investors may login at locations including this judicial district.[6]

The Ninth Circuit has adopted the "sliding scale" approach to contacts arising from interactive websites.  Specifically, in cases involving interactive websites, courts must analyze the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine their jurisdictional effect. *Cybersell*,130 F.3d at 418 (*quoting Zippo Mfg. Co. v. Zippo Dot Com*, Inc.,952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *see Boschetto*,539 F.3d at 1018 (where jurisdiction was improper because eBay advertised defendant's goods for sale one time only, and that listing closed once the item was sold, thereby extinguishing the Internet contact for this transaction within the forum state); *Stomp, Inc. v. NeatO*, LLC,61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (holding that although the actual number of sales to California citizens may be small, the act

---

[6] Specifically, in cases involving interactive websites, courts must analyze the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine their jurisdictional effect. *Cybersell*, 130 F.3d at 418 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,952 F. Supp. 1119, 1124 (W.D. Pa. 1997); see Boschetto,539 F.3d at 1018 (where jurisdiction was improper because eBay advertised defendant's goods for sale one time only, and that listing closed once the item was sold, thereby extinguishing the Internet contact for this transaction within the forum state); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (holding that although the actual number of sales to California citizens may be small, the act of engaging in `Internet commerce' with California citizens was sufficient to establish minimum contacts); Smith Enter., Inc. v. Capital City Firearms, No. CV 07-2163, 2008 WL 2561882 (D. Ariz. June 24, 2008) (holding that the defendant was subject to specific jurisdiction for trademark infringement arising out of use of a website that was accessible to and utilized by customers in the forum state to place product orders); *Tech Heads, Inc. v. Desktop Serv. Ctr.*,105 F. Supp. 2d 1142, 1151 (D. Or. 2000) (holding that defendant "intentionally availed itself of jurisdiction" by "posting a highly commercial, highly interactive Web site on the World Wide Web, engaging in Internet commerce with at least one [forum state] resident").

**OPPOSITION OF PLAINTIFF SITETOOLS, INC.**
**TO DEFENDANT BANSK GROUP LLC'S SECOND MOTION TO DISMISS**

1    of engaging in `Internet commerce' with California citizens was sufficient to

2    establish minimum contacts); *Smith Enter., Inc. v. Capital City Firearms*, No. CV

3    07-2163, 2008 WL 2561882 (D. Ariz. June 24, 2008) (holding that the defendant

4    was subject to specific jurisdiction for trademark infringement arising out of use of

5    a website that was accessible to and utilized by customers in the forum state to

6    place product orders); *Tech Heads, Inc. v. Desktop Serv. Ctr.*,105 F. Supp. 2d

7    1142, 1151 (D. Or. 2000) (holding that defendant "intentionally availed itself of

8    jurisdiction" by "posting a highly commercial, highly interactive Web site on the

9    World Wide Web, engaging in Internet commerce with at least one [forum state]

10   resident").

11       The claims in this action arise from the Defendant's claim of rights in

12   "BANSK" for the services of "[p]roviding venture capital, development capital,

13   private equity and investment funding", and the Defendant provides an interactive

14   "Investor Portal" through which the Defendant apparently conducts that business.

15   (Ancevski Decl., ₽7, Exh 7; RJN, Exh K). Accordingly, the Defendant's apparent

16   operation of an interactive website accessible in this judicial district and which is

17   directly related to the Defendant's nationwide claim of rights arising from the

18   federal trademark registration cited in the Complaint and on which this action is

19   premised, is sufficient to establish a contact in this forum which is directly related

20   to the instant action. Significantly, the Mordan Declaration, while showing a

21   partial copy of the <banskgroup.com> website, omits mention of any interactive

22   features of the Defendant's website, such as the "Investor Portal" or "Partner

23   Login." (*Id.*)

24       Defendant through its threats and its profits through subsidiaries are directed

25   into California. (Ancevski Decl., ₽₽ 8-16, Exhs. D-K; RJN, Exhs. A-E & G-I).

26   Bansk Group's control of both Amika and Eva NYC are conjoined by its director

27   having control of both entities together, not separately. (Ancevski Decl., ₽₽8-9

**OPPOSITION OF PLAINTIFF SITETOOLS, INC.**
**TO DEFENDANT BANSK GROUP LLC'S SECOND MOTION TO DISMISS**

Exhs. D-E; RJN, Exhs G-H) Amika, Eva, and Bansk Group are therefore conjoined and have sufficiently unified interests for purposes of satisfying jurisdiction. (Ancevski Decl., ¶¶ 8-16, Exhs. D-K; RJN, Exhs. A-E & G-H). The combination of the foregoing more than satisfies the required activity for personal and/or minimum contracts for general jurisdiction.

## V.   DEFENDANT IS IN DEFAULT FOR FAILURE TO COMPLY WITH COURT ORDERS AND THE MEET AND CONFER REQUIREMENTS OF LOCAL RULE 7-3; AND DISREGARD IS WARRANTED UNDER LOCAL RULE 7-4

### A.   Defendant Failed To Comply With Local Rule 7-3 In Its First Motion To Dismiss And Repeated The Same Failure In Its Second Motion To Dismiss, Which Has Been Noted By The Court As Deficient and Warrants Being Stricken or Disregarded

Local Rule 7-3 requires the movant to meet and confer at least seven (7) days prior to the filing of a motion to resolve issues in good faith. That did not happen here. The first motion to dismiss filed on February 9, 2023 was defective for failure to comply with L.R. 7-3. (DNs 18 & 20). The Court struck Defendant's motion to dismiss for failure to comply with L.R. 7-3. (DN 21). In its second motion to dismiss, Defendant again failed to meet and confer at least seven (7) days before the filing of its second motion. The Court correctly issued Notices of Deficiencies (DN 29).

After the order striking the first motion to dismiss, on February 10, Defendant's counsel, Lisa Tan, made such attempt insufficiently -- only three (3) days prior to filing the instant second motion on February 13. Defendant did not comply with the 7-day requirement of L.R. 7-3, and Defendant sought to enlist Plaintiff's counsel in violation of the rule by agreeing to a conference less than seven days prior to filing.  (Long Decl., ¶5-7, Exh A). The Court's eventual permission to refile did not remove Defendant's obligation to comply with Local

Rules, including L.R. 7-3. Defendant again did not comply with L.R. 7-3 as to its second motion to dismiss, and after the Court's February 28 order, Defendant still has not done so.  "Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion." *Cares v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012). The docket correctly reflects that Defendant's second motion to dismiss does not contain a statement demonstrating compliance with LR 7-3. (DN 29). Therefore the instant motion is improper and should be STRICKEN or otherwise DISREGARDED under Local Rule 7-4 for non-compliance with Local Rule 7-3.[7]

## VI.   DEFENDANT'S THIRD CLAIM IS LEGALLY COGNIZABLE

### A.   Defendant Disregards Plaintiff's ACPA Claim

In addition to non-compliance with this Circuit's local rules, Defendant's second motion to dismiss neglects to acknowledge any ACPA claims likely because any mention of them would be clearly fatal and expose their lack of merit. In *Pocketbook International SA v. SiteTools, Inc., et al.* (Case No. 2:20-cv-08708), SiteTools, Inc. filed a Motion for Summary Judgment on the basis of seniority, holding that Pocketbook's ACPA claim fails as a matter of law because Defendants' web domain registration of <Pocketbook.com> precedes Pocketbook's asserted trademark applications.

---

[7] Plaintiff was prejudiced by the failure of Defendants to meaningfully meet and confer on the substance of the second motion to dismiss. Mr. Sun's conclusory claim that he must "agree to disagree" was not meaningful meet and confer, and effectively fails to meet and confer. (Long Decl., ⁋11, Exh C). Defendant's motion is untimely as non-compliant, and lacks meaningful meet and confer when it had opportunity to do so – and did not seek any resolution of any of the issues raised by Plaintiff's counsel Mr. Long.

> The ACPA makes distinctiveness at the time of registration of the domain name a condition for liability… **Here, Pocketbook.com was registered in 1997, long before Pocketbook began to use either of its marks.** The Court therefore GRANTS Defendants' MSJ as to Pocketbook's ACPA claim.

(RJN, Exh. F, pp. 19-20) (emphasis added).  **Here, Plaintiff's domain <bansk.com> was registered and used since 2013, long before "Bansk Group LLC" was formed in 2019 or "banskgroup.com" was ever registered.** (Ancevski Decl, ¶ 4, ) As such, Plaintiff cannot be held liable under an ACPA claim and will prevail on the merits of its claim for declaratory relief of non-infringement under the ACPA. Defendant's baseless attempt to assert liability under threat of the ACPA fails, and this court should DENY the instant second motion to dismiss.

### B.    Plaintiff's Use Of Bansk.com Is Lawful, Protected Trademark "Use" Under The Lanham Act

Contrary to Defendant's argument that Plaintiff may not enforce trademark rights, "[u]se of a trademark in a domain name constitutes 'use' under the Lanham Act." *DC Comics v. Towle*, 989 F. Supp. 2d 948, 957 n.2 (C.D. Cal. 2013) (citations). Defendant's contention that Plaintiff's use of <bansk.com> does not constitute use in commerce is incorrect and misplaced. The Lanham Act protects both registered and unregistered marks. *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1225–26 (9th Cir. 2008); *see also, GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n. 3 (9th Cir. 2000) (same standard applies to infringement whether the marks are registered or not). Here, Plaintiff's use of the domain <bansk.com> constitutes "use" protected by the Lanham Act.

Plaintiff has been in use of <bansk.com> since its registration in 2013 or at least 2016 by forwarding the domain to <refinancemortgage.com>, making its right to use in commerce both senior and exclusive against Defendants' use which did not start until 2019. "It is axiomatic in trademark law that the standard test of

ownership is priority of use." *Sengoku Works v. RMC Int'l,* 96 F.3d 1217, 1219 (9th Cir. 1996) "A party acquires ownership of a trademark through priority of use. *Brookfield Commc'ns* , 174 F.3d at 1047 (citations). The Lanham Act protects the earlier "*use* of a mark in commerce." *Grupo Gigante SA De CV v. Dallo & Co., Inc.* , 391 F.3d 1088, 1093 (9th Cir. 2004) Therefore, Defendant's claim is legally cognizable and the motion should be DENIED in this respect, as well, in addition to the numerous procedural deficiencies noted by the Court.

## VII.   CONCLUSION

Based on the foregoing, Defendant's second motion to dismiss should be DENIED in its entirety. Jurisdiction and venue are proper. Count III is legally cognizable. *In the alternative*, Plaintiff requests that the Court grant: (a) leave to amend the complaint to state additional jurisdictional facts; and (b) leave for limited discovery.

Dated: March 3, 2023

Respectfully Submitted,
JOHN B. BERRYHILL LLC

*/s/ John B. Berryhill*
John B. Berryhill, Ph.D., Esq.
*Counsel for Plaintiff,*
*SITETOOLS, INC.*

Dated: March 3, 2023

LONG & ASSOCIATES

*/s/ Michael A. Long*
Michael A. Long, Esq.
*Counsel for Plaintiff,*
*SITETOOLS, INC.*

## Certificate of Service

I certify that on the date undersigned, I filed the foregoing document with the Court's CM/ECF system, which will provide notice of the same to the following:

Lisa Tan, Esq.
RUSSAKOW & TAN, LLP
275 E California Blvd.
Pasadena, CA 91106
Tel.: (626) 683-8869
Fax: (626) 683-8870
Email: ltan@russakowtan.com
*Attorneys for Defendant, BANSK GROUP LLC*

Hyung Gyu Sun
DUNLAP BENNETT & LUDWIG
8300 Boone Blvd., St 550
Vienna, VA 22182
Tel.: 703-777-7319
Fax: 703-777-3656
Email: hsun@dbllawyers.com
*Attorneys for Defendant, BANSK GROUP LLC*

Executed on **March 3, 2023**, at Los Angeles, California.

_/s/ Michael A. Long_
Michael A. Long, Esq.

**OPPOSITION OF PLAINTIFF SITETOOLS, INC.
TO DEFENDANT BANSK GROUP LLC'S SECOND MOTION TO DISMISS**